NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| IN RE PAULSBORO DERAILMENT CASES | : | Master Docket No. 13-784 (RBK/KMW) |
| TONYA KIDD, et al. | : | |
| Plaintiffs | : | Civil No. 13-208 (RBK/KMW) |
|  | : | (Doc. No. 58) |
| v. | : | |
|  | : | **OPINION** |
| CONSOLIDATED RAIL CORPORATION, et al. | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Tonya Kidd, et al. ("Plaintiffs")[1] to remand this case to the Superior Court of New Jersey, Gloucester County. Consolidated Rail Corporation ("Conrail"), Norfolk Southern Railway Company, and CSX Transportation (collectively "Defendants") argue that the case was properly removed pursuant to this Court's

---

[1] Because there are 100 individual plaintiffs in this matter, the Court will not list each of them by name in this opinion. See Amended Complaint, ECF Docket No. 29.

diversity jurisdiction under 28 U.S.C. § 1332. Because the Court finds that it has jurisdiction over this matter, Plaintiffs' motion to remand will be **DENIED**.

## I. BACKGROUND

### A. Derailment and Procedural History

On the morning of November 30, 2012, a freight train derailed and plunged into the Mantua Creek in Paulsboro, New Jersey when the Paulsboro Bridge,[2] a railroad bridge spanning the creek, buckled and collapsed. Several cars became partially submerged in the creek. Am. Compl. ¶¶ 109, 120. At least one of the derailed railcars released its cargo of vinyl chloride into the air and water. Id. ¶ 121. As a result, the Borough of Paulsboro declared a state of emergency and shortly thereafter, residents of the area, including some plaintiffs in this matter, were directed to evacuate or shelter in place. Id. ¶ 132.

Plaintiffs allege that Defendants acted negligently and recklessly in their operation of the freight train and maintenance of the bridge. They further allege that the train proceeded across the bridge against a red signal, which indicated that the bridge, which could swing open to allow water traffic, was not ready to safely accommodate rail traffic. Id. ¶¶ 111-12. Plaintiffs also assert that shortly before the derailment, Defendants had been notified of deficient conditions relating to the operation of the bridge, but failed to correct the problems. Id. ¶ 117. Many plaintiffs allege that they have suffered from coughing fits and other physical symptoms as a result of exposure to the chemicals that spilled from the railcar. Id. ¶¶ 129-30, 134. They also allege that they are at a greater risk of future illnesses, including cancer, and have sustained a

---
[2] This case is consolidated onto a master docket for discovery purposes with a number of other actions related to the railroad derailment. The complaint in one of the other actions consolidated onto the Master Docket refers to the bridge as the "East Jefferson Street Bridge." Compl. ¶ 20, Hamilton v. Consol. Rail Corp., Civ. No. 13-3724.

diminution in the value of their properties and other economic losses as a result of Defendants' conduct. Id. ¶¶ 135-38.

Plaintiffs brought this case against Defendants in the Superior Court of New Jersey, Gloucester County, on January 7, 2013. The defendants named in the Superior Court complaint were Conrail, which is incorporated in Pennsylvania and also maintains its principal place of business in Pennsylvania, Norfolk Southern Railway Company, which is incorporated in Virginia and maintains its principal place of business in Virginia, and CSX Transportation, a corporation with its principal place of business in Florida.[3] See Notice of Removal Ex. A ¶¶ 54-56

On January 11, 2013, Defendants removed the complaint to this Court pursuant to 28 U.S.C. § 1441, asserting that diversity jurisdiction existed, pursuant to 28 U.S.C. § 1332(a). On October 11, 2013, Plaintiffs filed the instant motion to remand, arguing that Conrail is a citizen of New Jersey by operation of N.J.S.A. 48:12-131, and for that reason, this Court does not have jurisdiction over this matter, and the case must be remanded to state court.

**B. Origination of Conrail**

Conrail was formed on April 1, 1976 pursuant to the Regional Rail Reorganization Act of 1973 ("Rail Act"), 45 U.S.C. § 741, et seq. The Rail Act provided for the establishment of "a corporation to be known as the Consolidated Rail Corporation." 45 U.S.C. § 741(a). Conrail was to be a "for-profit corporation established under the laws of a State," and its principal office was to be "located in Philadelphia in the Commonwealth of Pennsylvania." Id. § 741(b). The Rail Act also contemplated "the filing of articles of incorporation." Id. § 741(c). Subsequently, Conrail established its principal place of business in Philadelphia, and after initially

---

[3] Although the initial complaint did not allege the state of incorporation of CSX, it evidently is incorporated in Virginia. See Notice of Removal ¶ 11.

incorporating in Delaware, Conrail was officially incorporated in Pennsylvania on February 10, 1976. Def. Opp'n Ex. A. ¶ 18.[4] Conrail indicates that it has not filed articles of incorporation or a certificate of incorporation since that time in any state other than Pennsylvania.[5] The newly formed corporation was directed to take possession of the "rail properties" of certain bankrupt railroads. 45 U.S.C. § 742. As a result, in 1976, Conrail acquired most of the rail assets of the Central Railroad of New Jersey ("CNJ"). See In re Cent. R.R. Co. of N.J., 473 F. Supp. 225, 226 (D.N.J. 1979).

## II. DISCUSSION

### A. Standard for Removal

Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. To defeat a plaintiff's motion to remand, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. See Abels, 770 F.2d at 29 ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand."); Glenmede Trust Co. v. Dow Chem. Co., 384 F. Supp. 423, 433-

---

[4] Defendants' brief indicates without citation that Conrail was incorporated in Delaware. The Court relies on the accuracy of the brief in describing Conrail's corporate history in this section, observing that this is not an issue in dispute, nor does it affect the outcome of the jurisdictional inquiry. See Def. Opp'n at 3.

[5] Although Defendants cite the affidavit of a Conrail Vice President in support of its representation that Conrail has not filed articles of incorporation or a certificate of incorporation in any other state, it does not appear that the affidavit so indicates. See Def. Opp'n Ex. A. While an assertion in the brief alone might be insufficient to demonstrate this fact, Defendants also attach an exhibit showing that New Jersey designates Conrail as a "Foreign Profit Corporation," thus adequately demonstrating that it has not filed for incorporation in New Jersey. See Def. Opp'n Ex. C.

34 (E.D. Pa. 1974) ("It is well settled that district courts should remand close or doubtful cases for two reasons. First, remand will avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to decide the case.").

### B. Subject Matter Jurisdiction

Federal Courts are courts of limited jurisdiction, and they may only decide cases as authorized by Congress or the Constitution. Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994). Congress has authorized federal subject matter jurisdiction in civil suits where the amount "in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different States." 28 U.S.C. § 1332(a). The statutory requirement that parties be citizens of different states means that complete diversity must exist; if any two adverse parties are co-citizens, there is no jurisdiction. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 531 (1967). When a corporation is a party, it "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

Plaintiffs, all citizens of New Jersey, contend that this Court lacks subject matter jurisdiction because Conrail is also a citizen of New Jersey. They argue that Conrail is a New Jersey corporation by operation of New Jersey statute, and that, pursuant to common law principles, even independent of the statute, Conrail is a New Jersey corporation because one of its predecessor corporations, CNJ, was incorporated in New Jersey. Because of its corporate status, they argue that it follows that Conrail is a New Jersey citizen for purposes of federal jurisdiction. Their argument fails for two reasons.

1. Citizenship Requires Formal Incorporation

Although Plaintiffs concede that Conrail is incorporated under the laws of the state of Pennsylvania and has its principal place of business in Pennsylvania, they argue that pursuant to New Jersey Stat. Ann. 48:12-131, it is also deemed to be a citizen of New Jersey for diversity purposes. N.J.S.A. 48:12-131 provides:

> The several parties to any such agreement of consolidation or merger shall, from the time of the recording thereof in the office of the Secretary of State, be taken to be one railroad company by the name adopted in case of a consolidation or by the name of the acquiring company in case of a merger, possessing within this State all the rights and franchises and subject to all the restrictions, disabilities and duties of the companies of this State, or owning or operating any railroad in this State, so consolidated or merged and in case of a consolidation, if any of the constituent companies so consolidated was a corporation of this State, the new company formed by such consolidation shall be a corporation of this State or of this State and some other State or States.

N.J.S.A. 48:12-131.

Defendants refer to N.J.S.A. 48:12-131 as a "domestication" statute and cite a number of cases where courts reject the argument that such statutes create citizenship for diversity purposes. See, e.g., S. Ry. Co. v Allison, 190 U.S. 326, 331, 339 (1903) (rejecting the idea that a railroad incorporated in Virginia was a North Carolina citizen by virtue of a statute that denominated it as such when it satisfied the requirements for doing business in North Carolina); St. Louis & San Francisco Ry. Co. v. James, 161 U.S. 545 (1896) (rejecting the argument that a railroad became an Arkansas citizen by virtue of a statute when it purchased an Arkansas railroad and filed a copy of its articles of incorporation with the secretary of state of Arkansas); Union Pac. R. Co. v. 174 Acres of Land Located in Crittenden County, Ark., 193 F.3d 944, 947 (8th Cir. 1999) (holding that the line of cases including Allison and James continue to be controlling law subsequent to Congress's 1958 amendment of § 1332); Rudisill v. Southern Ry. Co., 548 F.2d 488 (4th Cir. 1977) (rejecting a challenge to jurisdiction where a railroad had purchased the

property of another railroad at a foreclosure sale, and filed documents with the secretary of state of North Carolina, which made the railroad a domestic corporation under North Carolina law).

Plaintiffs, in turn, argue that the New Jersey statute is not a "domestication" statute, and that there is a distinction between statutes forcing domestic corporate status upon a corporation as a condition of doing business in a state and statutes that address the consolidation of corporations of different states. They argue that N.J.S.A. 48:12-131 falls into the latter category, and that such a railroad inherits the corporate status of its predecessors.[6] They argue that "the New Jersey statute merely codifies the common law rule that consolidated railroad corporations with a New Jersey constituent company shall remain citizens of New Jersey." Pl. Reply at 7. However, it is not necessary to determine whether the distinction that Plaintiffs endeavor to highlight between the two types of statutes is appropriately drawn, because it does not alter the outcome.

In 1958, Congress amended the diversity statute to add 28 U.S.C. § 1332(c), defining citizenship in the corporate context for the first time. See Union Pac., 193 F.3d at 946-47. Since that time, courts have interpreted the language in 28 U.S.C. § 1332(c)(1) indicating that a corporation is "a citizen of any State by which it has been incorporated" to mean that a corporation must go through the state's formal incorporation process to be deemed "incorporated" for diversity purposes. The language of § 1332(c)(1) indicating that a corporation is a citizen of "any State by which it has been incorporated" means "the state in which the

---

[6] It appears that Plaintiffs are correct in observing that the New Jersey statute involved here would not be considered a "domestication statute" as the term has generally been used. For example, in the academic literature cited by Defendants, domestication statutes are defined as "state statutes which required foreign corporations, as a condition of doing business in the state, to file a copy of their charters and declared them to be domestic corporations." Multiple Incorporation as a Form of Railroad Organization, 46 Yale L.J. 1370, 1372 (1937). N.J.S.A. 48:12-131 does not require the filing of charters or certificates of incorporation with the state, nor does it impose any requirements upon an out-of-state railroad as a condition of doing business. N.J.S.A. 48:12-131 appears to thus be distinguishable from the statutes discussed in the James/Allison line of cases.

appropriate regulatory agency has issued a certificate of incorporation or other legal documents signifying that the corporation has been properly established pursuant to that state's law." Fritz v. American Home Shield Corp., 751 F.2d 1152, 1154 (11th Cir. 1985). The Eleventh Circuit went on to hold "that no further inquiry is appropriate." Id. Although a corporation might have "residence" based upon state statutes that provide for domestic corporate status, such residence does not equal citizenship for purposes of diversity jurisdiction. Arab Int'l Bank & Trust Co. v. Nat'l Westminster Bank, Ltd., 463 F. Supp. 1145, 1148 (S.D.N.Y. 1979). A state may require a corporation to reincorporate before doing business in that state, but anything short of such local reincorporation does not create citizenship. Id. See also Channel Bio Corp. v. Lewis, Civ. No. 08-57, 2008 WL 2626568 at *3 (S.D. Ill. June 26, 2008) (rejecting the argument that "a corporation should also be deemed to take on the citizenship of corporations with which it merged . . . . for diversity purposes" and noting that "the cases cited by Defendants were all decided prior to 1958, when Congress first amended the federal diversity statute to expressly address the citizenship of corporations for diversity purposes.").

The leading treatises agree that purported methods of incorporation aside from formal incorporation do not destroy federal court jurisdiction. For example, Moore's Federal Practice indicates that "for diversity purposes, involuntary incorporation under state law is disregarded. This rule is based on a constitutional limitation that prohibits states from destroying federal court jurisdiction if the Constitution and Congress have conferred jurisdiction . . . . The privilege to incorporate in another state, for example by virtue of the acquisition of a company incorporated in another state, does not automatically give a corporation citizenship in the second state." 15 Moore's Federal Practice § 102.53 (3d ed. 2010). Wright & Miller's treatise on federal practice similarly indicates that "[t]he general rule, and the one consistent with the diversity statute's

reasonably explicit language, is that if the corporation is merely licensed to do business or is denominated a domestic corporation in the second state, but the relevant legislation of that state requires less than local incorporation, the company does not become a citizen of the second state for diversity of citizenship purposes." Charles Allen Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 3623 (3d ed. 2009).

Plaintiffs cite cases predating the amendment of § 1332, indicating that when corporations consolidate, the consolidated corporation is a citizen of any state in which the predecessor companies were citizens. See, e.g., Patch v. Wabash R.R. Co., 207 U.S. 277, 283-84 (1907) (holding that diversity did not exist because a railroad was a citizen of five different states when it came about as a result of the consolidation of five corporations created in five states); Starke v. New York, Chicago & St. Louis R. Co., 180 F.2d 569, 571 (7th Cir. 1950) ("All the decisions and text-writers agree that, where one corporation is formed by the consolidation of two or more corporations, the consolidated corporation is a citizen of each state in which any of the constituent companies was a citizen.").

These cases notwithstanding, Plaintiffs have not shown how such a theory of citizenship meets the "by which it has been incorporated" requirement set forth in § 1332(c)(1). All of the cases cited by Plaintiffs in support of its theory of acquisition of citizenship by consolidation were decided prior to 1958, when § 1332 was amended to set forth a definition of corporate citizenship. Plaintiffs have not pointed to a single case applying § 1332(c)(1) where a court found that diversity jurisdiction was defeated because a corporation inherited the citizenship of a constituent company after a consolidation or merger without locally reincorporating. Although Plaintiffs might be able to show that Conrail is a "corporation of New Jersey," they equate this with citizenship without explaining why such a conclusion should be drawn. New Jersey

9

citizenship here would require that Conrail be <u>incorporated</u> by New Jersey, and not merely that it is a New Jersey <u>corporation</u>. There is a distinction between the two terms. Black's Law Dictionary defines "incorporate" as "To create a corporation; to confer a corporate franchise upon determinate persons." Black's Law Dictionary 766 (6th ed. 1990). Thus, "incorporate" relates to the formation of an entity. Even if a corporation is later deemed to be a corporation of a particular state by virtue of some act it took, that is not equivalent with incorporation. New Jersey sets forth the requirements for incorporation in N.J.S.A. 14A:2-7, which involves filing a certificate of incorporation. New Jersey does not require railroads to reincorporate in New Jersey. Neither do Plaintiffs claim that Conrail took any of the steps required to incorporate in New Jersey. In fact, N.J.S.A. 48:12-131 recognizes that a railroad subject to its language, although "a corporation of this state," has not been incorporated by New Jersey. The statute provides that "[t]he new or acquiring company may take land by purchase or condemnation in the same manner and to the same extent as companies organized under the laws of this State." N.J.S.A. 48:12-131. The statute thus continues to differentiate between a consolidating company subject to the statute, and one that was actually "organized under the laws" of New Jersey.

Although they characterize their position as "well-settled law," Plaintiffs have not cited any law subsequent to 1958 where, under § 1332(c), a corporation was deemed to be incorporated in a state by operation of the New Jersey statute they rely upon, by operation of any similar statute of another jurisdiction, or by operation of common law principles. <u>See</u> Pl. Reply at 1. They also have not cited any law suggesting that the "has been incorporated" language in § 1332(c)(1) means anything other than incorporation through a formal process by which a state official issues a certificate of incorporation or similar document. The Court thus finds that Conrail has not been incorporated by New Jersey.

2. Plaintiffs Have not Demonstrated the Applicability of N.J.S.A. 48:12-131

Plaintiffs also have failed to demonstrate that N.J.S.A. 48:12-131 (or the common law principle that they argue it codifies) even applies in this case. The statute operates when a consolidation takes place. Plaintiffs' however, have not shown that Conrail was formed by a consolidation or a merger. The defendants have made a convincing showing that Conrail was not the result of a consolidation with CNJ, but rather acquired its assets. See Def. Sur-Reply 4; Nat'l R.R. Passenger Corp. v. McDonald, Civ. No. 12-2731, 2013 WL 5434618 at *8 (S.D.N.Y. Sept. 26, 2013) (describing the conveyance of property from the railroad companies' bankruptcy estates.) The mechanism by which Conrail acquired the assets of CNJ was a bill of sale between the CNJ Bankruptcy Trustee and Conrail. See Def. Sur-Reply Ex. A. Plaintiffs have not made any showing that the acquisition of assets invokes 48:12-131, nor does it seem that such a transaction would satisfy the requirements of 48:12-131. The New Jersey courts have defined consolidation as follows:

> A merger of two corporations contemplates that one will be absorbed by the other and go out of existence, but the absorbing corporation will remain. In a consolidation, the two corporations unite and both go out of existence, and a new amalgamated corporate enterprise takes the place of the former corporations.

Wilson v. Fare Well Corp., 140 N.J. Super. 476, 485 (L. Div. 1976) (citing Applestein v. United Board and Carton Corp., 60 N.J. Super. 333, 342, aff'd, 33 N.J. 72 (1960)). Although CNJ ceded the great majority of its assets to Conrail, it evidently did not "lose its identity," as Defendants have demonstrated that CNJ continued as a going concern subsequent to the sale of assets to Conrail. See In re Central R.R. Co. of New Jersey, 950 F.2d 887, 888 (3d Cir. 1991). Therefore, it does not appear that a consolidation took place as defined by New Jersey law. Thus, even if application of N.J.S.A. 48:12-131 were to make a consolidating railroad a citizen for diversity

11

purposes, the New Jersey statute cannot destroy jurisdiction here because the record does not show that Conrail and CNJ consolidated.[7]

Finally, the Court observes that Plaintiffs point to a case recently litigated in New Jersey state court, in which Conrail argued that it was a New Jersey corporation. See Pl. Mot. to Remand 7-8. As Plaintiffs acknowledge, statements made by Conrail in a prior brief are not relevant to this Court's jurisdictional inquiry. See Mennen Co. v. Atl. Mut. Ins. Co., 147 F.3d 287, 294 (3d Cir. 1998) ("subject matter jurisdiction depends upon facts of record, and . . . a federal court is obligated to make an independent determination of those facts."). Further, in the case pointed to by Plaintiffs, Conrail argued that it should be deemed a New Jersey corporation with respect to trespass claims, but did not argue that it was a New Jersey citizen, and did not seek to apply the federal diversity statute. See Funes ex rel Estate of Martinez v. Norfolk Southern Corp., 2012 WL 4069543 (N.J. App. Div. Sept. 18, 2012).[8] As is evident from the law discussed herein, a corporation's status with respect to the conveyance of some benefit or burden due to being denominated as a domestic corporation is not always dispositive as to citizenship for diversity purposes.

### III. CONCLUSION

For the reasons stated herein, Plaintiffs' motion to remand will be **DENIED**. An appropriate order shall issue.

---

[7] Although the parties did not raise the issue, Plaintiffs have also not demonstrated that a consolidation agreement was recorded in the office of the New Jersey Secretary of State, as would evidently be required if Plaintiffs were to show citizenship by operation of N.J.S.A. 48-12:131.

[8] In its ultimate decision in the case, the New Jersey Appellate Division declined to rule on whether Conrail's corporate status was affected by N.J.S.A. 48:12-131, instead grounding its decision in the state's railroad immunity statute. See Funes ex rel Estate of Martinez v. Norfolk Southern Corp., 2012 WL 4069543 at *5 (N.J. App. Div. Sept. 18, 2012).

Dated: 12/30/2013                                                   /s/ Robert B. Kugler
                                                                                             ROBERT B. KUGLER
                                                                                             United States District Judge